NOT FOR PUBLICATION                                    (Docket No. 34, 39)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                          :
CHRISTOPHER BYRD,                         :
                                          :
                    Plaintiff,            :        Civil No. 05-2648 (RBK)
            v.                            :
                                          :        **OPINION**
FEDERAL EXPRESS CORPORATION               :
and CONCENTRA MEDICAL CENTER,             :
                                          :
                    Defendants.           :
_____   :

**KUGLER**, United States District Judge:

       This matter comes before the Court on the motions of Defendants Federal Express

Corporation ("FedEx") and Concentra Medical Center ("Concentra") for summary judgment on

the Complaint of Plaintiff Christopher Byrd ("Plaintiff").  For the reasons expressed below,

FedEx will be granted summary judgment on all counts in Plaintiff's Complaint.   On the sole

count against it, Concentra will also be granted summary judgment.

**BACKGROUND**

       Plaintiff began working for FedEx on July 24, 1995.  He worked initially as a courier and

in 1998 moved into a position as a senior customer service agent.  Plaintiff suffers from diabetes

and was also, through at least part of his employment with FedEx, an alcoholic.  From October 9,

2000 through December 20, 2000, Plaintiff was on leave from FedEx pursuant to the Family

Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").  After returning to work, Plaintiff self-reported

an alcohol problem to FedEx on February 9, 2001.  He once again took authorized leave pursuant

to the FMLA in order to seek treatment for his alcohol problem.  On February 20, 2001, the last day of his leave under the FMLA, Plaintiff signed a Statement of Understanding with FedEx. This Statement of Understanding required Plaintiff to submit to random follow-up alcohol testing.  Plaintiff signed another Statement of Understanding on April 5, 2001.  The parties dispute whether Plaintiff returned to work on February 21, 2001 or April 9, 2001.  Other than the random alcohol testing, Plaintiff's job duties were the same after he returned to FedEx.

During the next two years, Plaintiff continued working at FedEx and successfully passed all random alcohol screens.  (Ex. V.)  On April 7, 2003, Plaintiff went to Concentra Medical Center to take a breathalyzer alcohol test.  This test showed an alcohol level of 0.072.  Plaintiff then took a follow-up test, which also came back positive for alcohol.  FedEx then suspended Plaintiff with pay.  (Ex. M.)  During this suspension, Plaintiff submitted to FedEx a note from his primary care physician about the possibility that the tests were false positives, rather than accurately reflecting alcohol in Plaintiff's system.  This note read, in part: "The ketones in [Plaintiff's] blood from diabetes melletees [sic] and numerous meds more than likely could cause a false positive breath test and should have been confirmed [with] a blood alcohol level."  (Ex. O.)  Plaintiff's supervisor discussed Plaintiff's test results and the possibility of a false positive with FedEx's medical review officer ("MRO").  The MRO reviewed the test results and opined in an email sent on April 9, 2003 that "[k]etones would not have caused a false positive on this test.  The testing is highly specific for alcohol on the breath, it does not respond to other substances on the breath."  (Ex. P.)

FedEx terminated Plaintiff's employment on April 11, 2003.  Plaintiff filed this case against FedEx in the New Jersey Superior Court, Law Division–Burlington County on April 8,

2005, alleging violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(a)

("LAD"), as well as intentional and negligent infliction of emotional distress.  Defendant FedEx

removed the case to this Court on May 20, 2005.  On August 11, 2006, Plaintiff filed an amended

complaint, adding claims for breach of contract, breach of the implied covenant of good faith and

fair dealing, and violations of the FMLA.  Plaintiff also added Concentra as a defendant,

claiming negligence.

**STANDARD OF REVIEW**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the

nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the

evidence presented by the parties, the Court "must view the facts in the light most favorable to

the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d

641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment.  Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth

specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the

nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**DISCUSSION**

**I.      The FMLA Does Not Apply**

When an employee becomes unable to perform his job because of a serious health condition, he is entitled to twelve weeks of leave under the FMLA during any twelve-month period. 29 U.S.C. § 2612(a)(1). The parties do not dispute that the last day of Plaintiff's protected leave during the twelve-month period at issue was February 20, 2001. Plaintiff's challenge to the Statement of Understanding under the FMLA focuses on the right to reinstatement at the same position with the same benefits when an employee returns to work after FMLA leave. 29 U.S.C. § 2614(a)(1). The Court concludes that the FMLA does not apply to Plaintiff's claims.

Plaintiff attempts to argue that there is a disputed issue of fact as to whether he returned to work before the expiration of his FMLA leave; however, the evidence is clear that Plaintiff returned to work on April 9, 2001 and not February 21, 2001. (Ex. V (alcohol testing records showing return to duty alcohol screen administered on April 5, 2001); Ex. W (leave of absence history showing short-term disability leave ending on April 9, 2001); Ex. X (earnings history report showing short-term disability pay on April 7, 2001 and regular pay on April 14, 2001); Ex. Y (employee calendar showing medical leave of absence through April 8, 2001 and return to

4

work on April 9, 2001).)

Plaintiff argues that because he signed a Statement of Understanding on February 20, 2001, there is a factual issue as to his actual return date.  The Court disagrees.  To survive a motion for summary judgment, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  Anderson, 477 U.S. at 252.  Plaintiff's employee calendar, pay record, and leave of absence history establish that he returned to work on April 9, 2001, after the expiration of his FMLA leave.  The protections of the FMLA therefore do not apply to the conditions of Plaintiff's return to his employment at FedEx.  See Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452 (E.D. Pa. 2005) (entitlement to restoration at same or equivalent position with same or equivalent benefits only applies for the statutory 12 week period and not to later non-FMLA leave); Fiatoa v. Keala, 191 F. App'x 551, 555 (9th Cir. 2006).  FedEx will be granted summary judgment on Plaintiff's FMLA claims.

## II.      The LAD and Statement of Understanding

Plaintiff's arguments under the LAD are two-fold.  First, the Complaint alleges that Plaintiff was wrongfully terminated because of his disability.[1]  Second, Plaintiff argues that the requirement that he enter into the Statement of Understanding before being allowed to return to work was itself discrimination in violation of the law.

### A.       Wrongful Termination

Plaintiff alleges he was wrongfully terminated because of his handicap, in violation of the LAD.  Under the LAD, an employer may not "refuse to hire or employ or. . . bar or. . . discharge

---

[1]Though Plaintiff does not pursue this claim in his opposition papers, a fair reading of the Complaint includes this allegation and the Court will consider it.  (Compl. ¶ 17-18)

or require to retire, unless justified by lawful considerations other than age, from employment [an] individual or. . . discriminate against such individual in compensation or in terms, conditions or privileges of employment" on discriminatory grounds.  N.J.S.A. § 10:5-12(a). The LAD expressly extends such protection to the disabled, "unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5-4.1. The elements of a prima facie case of disability discrimination are:  (1) plaintiff was disabled within the meaning of the law; (2) plaintiff had been performing his or her work at a level that met the employer's legitimate expectations; (3) plaintiff nevertheless had been fired; (4) the employer had sought another to perform the same work after plaintiff had been removed from the position.  If the plaintiff meets his prima facie burden, the employer must then articulate a legitimate, non-discriminatory reason for the employee's treatment.  Maher v. New Jersey Transit Rail Operations, Inc., 593 A.2d 750, 763 (N.J. 1991).

    First, alcoholism is a protected disability under the LAD.  Clowes v. Terminix Int'l, Inc., 538 A.2d 794 (N.J. 1988).  FedEx argues that Plaintiff has not proven that he suffers from alcoholism.  However, FedEx's actions demonstrate that it perceived Plaintiff as an alcoholic. Plaintiff self-reported his alcohol problem to FedEx, which FedEx documented.  (Ex. H.)  FedEx referred Plaintiff to an alcohol treatment program.  (Ex. H.)  Upon his completion of the program, FedEx insisted that Plaintiff participate in mandatory aftercare.  New Jersey courts have indicated that the LAD protects individuals perceived to be disabled as well as those actually disabled.  Rogers v. Campbell Foundtry Co., 447 A.2d 589 (N.J. Super. Ct. App. Div. 1982); Poff v. Caro, 549 A.2d 900 (N.J. Super. Ct. Law Div. 1987).

    As to the remaining elements of Plaintiff's prima facie case, there is no evidence that

6

Plaintiff was not performing his work at a level that met FedEx's legitimate expectations, and it

is clear that Plaintiff was terminated.  There is no evidence in the record about who, if anyone,

FedEx hired to replace Plaintiff.  However, even assuming that Plaintiff has met his prima facie

burden, FedEx had a legitimate non-discriminatory reason for terminating his employment.  The

evidence shows that Plaintiff was terminated for failing the alcohol screen on April 7, 2001.  (Ex.

Q.)  Plaintiff provides some evidence tending to show that this positive result was erroneous.

(Ex. O.)  However, at best, this is an argument that FedEx made a mistake, and mistakes are not

evidence of discrimination.  See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("the factual

dispute at issue is whether discriminatory animus motivated the employer, not whether the

employer is wise, shrewd, prudent, or competent").  Plaintiff's contentions regarding his

conversation with FedEx employee Patricia Clarkson and the possibility that "truck fumes"

caused a false positive are similarly unavailing.  Such evidence would again tend to show that

FedEx made a mistake in not investigating a false positive.  Plaintiff's contentions regarding the

accuracy of the test result do not raise a genuinely disputed issue of fact about whether FedEx

acted with discriminatory intent, only about whether or not FedEx could have done more to

ensure the accuracy of blood alcohol screens.

Plaintiff can point to no evidence that FedEx's reliance on the positive alcohol screen was

pretextual and merely masking underlying discriminatory intent.  Summary judgment is granted

to FedEx on Plaintiff's wrongful termination claim.

### B.    Validity of the Statement of Understanding

Plaintiff argues that the Statement of Understanding is discriminatory on its face.  He

contends FedEx's policy of requiring random drug and alcohol testing post-treatment singled out

7

individuals with addiction-related disabilities, and this "direct discrimination" against individuals with these disabilities violates the LAD. FedEx argues that this claim needed to be brought within two years of Plaintiff's consent to sign the Statement of Understanding and is now time-barred.

The LAD requires that claims be brought within two years of a violation. Montells v. Haynes, 627 A.2d 654, 655 (N.J. 1993). The alleged violation is the requirement that employees such as Plaintiff enter into a Statement of Understanding, consenting to random alcohol screens, as a condition of continued employment. Plaintiff signed the Statement of Understanding on April 5, 2001, over four years before he filed the Complaint in this case.

Plaintiff appears to argue that though he consented to the allegedly wrongful testing in 2001, the harm from the violation did not occur until "April, 2003, when [Plaintiff] was subject to the disciplinary components of the discriminatory alcohol screening policy." (Pl.'s Opp'n 2.) This argument falls flat. Any alleged harm occurred when Plaintiff, as a person with the disability of alcoholism, was treated differently than other non-disabled employees. Plaintiff's argument means that Plaintiff would have suffered no harm from FedEx's discriminatory policy had he not been terminated. The LAD is not so limited; it was enacted "to secure to handicapped individuals full and equal access to society, bounded only by the actual physical limits that they cannot surmount." Andersen v. Exxon Co., 446 A.2d 486, 495 (N.J. 1982). A rule that the discriminatory treatment itself did not result in actionable harm would be inconsistent with the remedial nature of the law. Plaintiff's challenge to the Statement of Understanding is therefore time-barred.

8

Plaintiff additionally claims that each alcohol test he was required to take was a continuing violation of the LAD and not barred by the statute of limitations. See Shepherd v. Hunterdon Developmental Ctr., 627 A.2d 611, 621 (2002). The continuing violation doctrine requires a plaintiff to establish that the alleged discriminatory acts were not separate and isolated, but rather a continuing pattern of discrimination. Factors for the Court to consider are whether the violations constitute the same type of discrimination, the frequency of the alleged violations, and whether the nature of the violations should trigger an employee's awareness of the need to assert her rights. West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995). Here, the ongoing random alcohol screens were not separate and isolated, but part of the alleged serial pattern of discrimination against individuals who had completed alcohol treatment programs.

However, even if Plaintiff can take advantage of the continuing violations doctrine, the Court finds that the random alcohol screens were not discriminatory within the meaning of the LAD. The FedEx employment manual contains a section entitled "Alcohol and Drug-Free Workplace." (Ex. A.) The manual informs prospective employees that "FedEx reserves the right to test an employee for alcohol and/or drugs at any time." (Ex. A at 1.) The manual also advises that employees may be "alcohol tested for postaccident, reasonable suspicion/cause, return-to-duty and follow up." (Ex. A at 3.) As a condition of FedEx employment, "[e]mployees must notify [FedEx] anytime they access drug/alcohol evaluation/rehabilitation for themselves. Treatment is mandatory, a signed Statement of Understanding required, and placement in the Follow-up Testing Program." (Ex. A at 9.) Plaintiff knew of these requirements. There is no evidence that Plaintiff was singled out in any way for random alcohol screens. The Court finds that this ongoing aftercare and follow-up testing, to which Plaintiff had consented, is not

discriminatory.  As will be discussed, Plaintiff was an at-will employee and so could have been terminated at any time.  Of course, FedEx could not have ended Plaintiff's employment based solely on his disability of alcoholism.  <u>Greenwood v. State Police Training Ctr.</u>, 606 A.2d 336, 342 (N.J. 1992).  FedEx could, however, permissibly require Plaintiff (and all other employees) to submit to random alcohol testing.  The Court notes the Third Circuit's discussion of a company policy requiring similar ongoing obligations of an employee with an alcohol problem:

> On appeal, plaintiff contends that the company's policy was not neutral because it applied only to alcoholics, a class of individuals who, she contends, are apt to relapse. The plaintiff's argument is untenable because the policy was tailored specifically to the needs of alcoholics and its provisions for after-care reflect a recognition that relapses can be a problem. Also, the policy was neutral in that it applied to all alcoholics. The fact that it did not apply to other forms of disability does not make it unlawfully discriminatory.

<u>Cole v. Exxon Mobile Corp.</u>, 142 F. App'x 52, 53 (3d Cir. 2005).

Summary judgment is granted to FedEx on Plaintiff's claims under the LAD.

### III.     The Statement of Understanding as a Contract between Byrd and FedEx

FedEx moves for summary judgment on Plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing claims.  Plaintiff does not respond specifically on these counts, other than to assert that FedEx's motion is "dependent upon a determination that there was in fact a positive screen here" and so disputed issues of fact preclude summary judgment.  (Pl.'s Opp'n at 13.)

The Court must first analyze whether Plaintiff may bring claims founded in contract or if his employee status bars the application of contract law to this case.  FedEx argues that Plaintiff was an at-will employee, whose employment could be terminated at any time for any reason by the company.  (FedEx Mot. Summ. J. at 19-20.)  The question for the Court is whether FedEx's

10

employment manual created an implied contract between Plaintiff and FedEx under <u>Wooley v.</u>

<u>Hoffmanm-La Roche, Inc.</u>, 491 A.2d 1257 (N.J. 1985).  This question turns on the "reasonable

expectations of employees."  <u>Witkowski v. Lipton</u>, 643 A.2d 546, 550 (N.J. 1994).

      The FedEx employment manual contains sections entitled "Alcohol and Drug-Free

Workplace" (Ex. A, discussed above) and "Termination Policy" (Ex. B).  The alcohol policy

section lists "Required Actions After Breathalyzer Tests," which indicates that a breath alcohol

test resulting in a 0.04 or above will result in termination.  This section further explains that "an

employee is terminated whenever an investigation confirms the guidelines of this policy have

been violated." (Ex. A at 4-5.)  The termination policy contains a clause entitled "Employment

at Will," which provides:

> The employment relationship between the Company and any employee may be
> terminated at the will of either party as stated in the employment agreement
> signed upon application for employment.  As described in that agreement, the
> policies and procedures set forth in this manual provide guidelines for
> management and employees during employment, but do not create contractual
> rights regarding termination or otherwise." (Ex. B at 2.)

      Additionally, Plaintiff acknowledged at his deposition that he signed a receipt when he

received the manual.  (Ex. E.)  This receipt, in the first sentence below a warning in bold-face

type to "read carefully," contained yet another disclaimer of contract rights: "The Company

wants you to understand that The Federal Express Employee Handbook should not be considered

a contract of employment, nor should The Federal Express Employee Handbook's provisions be

read or implied to provide for one."

      FedEx argues that the "Employment at Will" section of the Termination Policy

effectively disclaimed any contract rights an employee might perceive as arising from the

11

employment manual.  The Court agrees and concludes that the disclaimer was effective as a matter of law.  Nicosia v. Wakefern Food Corp., 643 A.2d 554, 561 (N.J. 1994).  The disclaimer is conspicuous, set off by the heading "Employment at Will," located in an appropriate section of the handbook, and written in clear language as opposed to legalese.  See also id.; N.J.S.A. § 12A:1-201(10) ("Whether a term or clause is 'conspicuous' or not is for decision by the court."); Mardini v. Wiking Freight, Inc., 92 F. Supp. 2d 378 (D.N.J. 1999) (finding disclaimer effective where written in normal type but set out on the first page of employee handbook).  The disclaimer clearly gives employees notice that "the policies and procedures set forth in this manual provide guidelines for management and employees during employment, but do not create contractual rights" on which employees can rely.  The Court finds that the employment manual itself does not give rise to a contract.  See Warner v. Federal Express Corp., 174 F. Supp. 2d 215, 223-28 (D.N.J. 2001) (Brotman, J., construing the same FedEx employment manual and disclaimer to not create an enforceable contract between FedEx and employees).

However, even if the relationship between Plaintiff and FedEx was not initially governed by a contract, the Complaint asserts that the Statement of Understanding created an enforceable contract, which FedEx breached.  (Compl. ¶ 33, 34.)  The Statement of Understanding lists Plaintiff's aftercare and continuing testing obligations and refers back to the company's alcohol policy:  "I also understand and agree that any positive alcohol tests occurring after my return to work will be handled in accordance with the Required Actions After Breathalyzer Tests section of the Alcohol and Drug-Free Workplace policy."  (Ex. J.)

Plaintiff's claims on this point are barred as well by FedEx's effective disclaimer of contractual rights.  In the receipt Plaintiff signed when he received the employment manual,

12

Plaintiff acknowledged understanding that "no manager or representative of the Company, other than the CEO or a senior vice president designated by the CEO, has any authority to enter into any agreement modifying this publication in any way" and that "[a]ny amendment or agreement, if made, shall not be enforceable unless it is in writing and signed by me and the CEO or designated senior vice president." (Ex. E.) This disclaimer, while slightly less conspicuous than those discussed previously because of its placement in the middle of a lengthy paragraph, was still sufficient to put FedEx employees on proper notice that later-enacted agreements would not create a different type of employment relationship. As noted above, Plaintiff signed this document just under this disclaimer. The Statement of Understanding did not create a contractual relationship between the parties. See also Warner, 174 F. Supp. 2d at 227-28 (discussing the "Record of Receipt" disclaimer for the same FedEx employment manual).

Moreover, the Court notes that even if an implied contract was created by the manual or the Statement of Understanding, Plaintiff has not raised a genuine issue of material as to FedEx's compliance. See e.g., Fowle v. C & C Cola, Div. of ITT-Continental Baking Co., 868 F.2d 59, 69 (3d Cir. 1989) ("[E]ven if these. . . policies amount to binding promises under Woolley, [plaintiff] has not raised a genuine issue of material fact that the relevant policy provisions were not fully complied with.") The alcohol policy provides that a breath alcohol test resulting in a 0.04 or above is a violation and that "an employee is terminated whenever an investigation confirms the guidelines of this policy have been violated." (Ex. A at 4-5.) Plaintiff's first and second breathalyzer results on April 7, 2003 were both above 0.04. (Ex. V.) After these results were disputed by Plaintiff, FedEx contacted a medical review officer, who reviewed Plaintiff's claims, including the letter from Plaintiff's doctor (Ex. O), and affirmed the results. Plaintiff has

not raised a genuine issue of material fact as to FedEx's actions in investigating the results of the test and terminating his employment in accordance with the employment manual.

As to Plaintiff's final contract claim, without a contract, there can be no recovery for breach of an implied covenant of good faith and fair dealing.  Wade v. Kessler Institute, 798 A.2d 1251, 1262 (N.J. 2002).  Summary judgment is granted for FedEx on this count as well.

**IV.     Emotional Distress Claims**

FedEx also seeks summary judgment on Plaintiff's claims of intentional and negligent infliction of emotional distress.  The New Jersey Supreme Court has held that liability may be imposed for intentional infliction of emotional distress where "[t]he conduct [has been] 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Buckley v. Trenton Saving Fund Society, 544 A.2d 857, 863 (N.J. 1988) (quoting Restatement (Second) of Torts, § 46 comment d (1965)).  To recover for negligent infliction of emotional distress, Plaintiff must prove that the defendant's conduct was negligent and proximately caused plaintiff's injuries.  Decker v. Princeton Packet, Inc., 561 A.2d 1122, 1127 (N.J. 1989).  Of particular concern is the foreseeability of the injury, and "there must be 'an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'"  Id. at 1128 (citation omitted).  Here, Plaintiff has produced no evidence of any emotional distress, and there is no evidence that FedEx acted intentionally to cause emotional distress or that any actions by FedEx proximately caused any distress.  See Young v. Hobart West Group, 897 A.2d 1063 (N.J .Super. Ct. App. Div. 2005) (finding no intentional or negligent infliction of emotional distress by plaintiff's employer where

plaintiff introduced no evidence of intent or proximate cause).  Summary judgment will be granted to FedEx on these counts.

## V.    Negligence Claims Against Concentra

Defendant Concentra moves for summary judgment on Plaintiff's claim that Concentra was negligent in administering the breathalyzer test and failing to insure the test's accuracy before reporting the results.  Plaintiff has not responded to Concentra's motion, and the Court will treat the motion as unopposed and will "treat all facts properly supported by the movant to be uncontroverted."  Brandon v. Warden, No. State Prison, 2006 WL 1128721, *3 (D.N.J. 2006) (quoting Allebach v. Sherrer, 2005 U.S. Dist. LEXIS 15626, at *5 (D.N.J. 2005)).

For the negligence claims against Concentra to survive summary judgment, Plaintiff must "make a showing sufficient to establish the existence of [every] element essential to" his case. Celotex, 477 U.S. at 322.  Plaintiff must establish the applicable standard of care, show that Concentra deviated from that standard of care, and introduce evidence that the deviation caused his injury.  Natale v. Camden County Correctional Facility, 318 F.3d 575, 579 (3d Cir. 2003).

Plaintiff has provided no evidence as to the applicable standard of care.  Concentra argues that because it is a licensed health care institution, Plaintiff's case is properly characterized as one for negligent malpractice, requiring expert evidence as to the standard of care.  (Concentra Mot. Summ. J. at 5.)  The Court agrees and finds that evidence as to the applicable standard of care is required.

The standard to apply in determining when a breathalyzer test must be confirmed through a blood test is not a matter of common knowledge such that "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a

defendant's negligence without the benefit of the specialized knowledge of experts," <u>Estate of Chin v. Saint Barnabas Med. Ctr.</u>, 734 A.2d 778, 785 (1999).  The Complaint alleges that Concentra should have interviewed Plaintiff about possible medical conditions that could have impaired the accuracy of the breath test and confirmed the breath test with a blood test.  Patricia Trumbette, the individual who administered the breath test to Plaintiff, testified at her deposition that such additional steps were in fact not required.  (Trumbette Depo. 85:18-86:24.)  Plaintiff has introduced no evidence from either lay witnesses or other practitioners in Ms. Trumbette's and Concentra's field showing that such steps were required or establishing what would be the accepted procedure for ensuring the accuracy of test results.  Concentra's allegedly "careless acts" are not "obvious."  <u>Palanque v. Lambert-Woolley</u>, 774 A.2d 501, 506 (N.J. 2001).[2]

Because Plaintiff has produced no evidence as to the standard of care, summary judgment will be granted to Concentra.  <u>See also</u> <u>Vargo v. Nat'l Exch. Carriers Ass'n, Inc.</u>, 870 A.2d 679, 688 (N.J. Super. Ct. App. Div. 2005) (discussing duty of care owed by independent testing companies for accurately reporting testing results to employers).

**CONCLUSION**

Fed Ex's motion for summary judgment on Plaintiff's Complaint is granted in its entirety.  Summary judgment is granted to Concentra on Plaintiff's negligence claim.

---

[2]The conclusion that this is not a "common knowledge" malpractice case also means Plaintiff was required to file an affidavit of merit.  <u>See</u> N.J.S.A. § 2A:53A-27; <u>Hubbard v. Reed</u>, 774 A.2d 495, 499-500 (N.J. 2001).  Plaintiff's failure to do so is another reason to grant Concentra summary judgment.

_____3/04/2008_____                                  _____/s/ Robert B. Kugler_____
Date                                                 Robert B. Kugler
                                                     United States District Judge